Thank you, your honors. May it please the court. My name is Harmeet Dhillon, and I am counsel for the appellants in this matter. And I respectfully request to reserve 10 minutes of my argument time for rebuttal if necessary. Thank you, your honors. May it please the court. I am honored in this matter to represent four Californians of faith, Congregant Wendy Gish, the lead plaintiff, and Pastors Patrick Scales, James Dean Moffitt, and Brenda Wood. As Mr. LaMandria has ably argued before me, for the past 10 months, Californians have had their fundamental First Amendment rights severely burdened and restricted by their own government. For 302 days as of today, faithful congregants have been prevented from exercising the freedoms and liberties guaranteed under the Constitution of the United States on an equal basis as secular activities. Continuously in varying degrees over the past year, under the original executive order, which is frontally challenged, facially and as applied in our complaint on behalf of faithful Californians, that is Executive Order N-33-20, Governor Newsom has decreed that the temples of God be either shut or severely limited, while the doors to the temples of commerce remain open throughout this time period and widely trafficked with few restrictions, and certainly not restrictions comparable to the restrictions on people of faith. In the recent Supreme Court decision of Roman Catholic Diocese of Brooklyn v. Cuomo, the court clearly established what the appellants have been arguing since the beginning of this case, and this was one of the first cases filed to challenge the COVID restrictions against people of faith in California. Namely, the court established that the Constitution does not countenance this type of two-tier discriminatory treatment of religion that places, from the very get-go, all religious activity at a lower level of respect and recognition by the government than other so-called essential aspects of our lives. And the Supreme Court very clearly established the type of scrutiny that should be applied in the face of dozens of court rulings throughout the United States, in this court and other courts, which have applied different levels of scrutiny, and the court mandated that strict scrutiny should be applied to these restrictions on religion. The Supreme Court also importantly struck down the hard caps that have been applied here in California and regularized the treatment of capacity control, which I would agree is an important distinction in stopping the spread of a disease, to commercial endeavors. And that is something that is a fundamental difference between the state of the law now in New York versus what we have here in California, as Mr. Lemandria has argued. And it is our view, your honors, that the Brooklyn case demands remand of this case, reversal and remand of this case, to the district court for proceedings consistent with that, on these multiple grounds. What is exactly before us today? I confess I am confused by the procedural posture. I understand we're now down to one appeal from a final judgment, but I'm not sure what issues are teed up by the final judgment. So could you identify what you think is at issue today? Yes, your honor. Thank you for the question, Judge Clifton. What is at issue here is there has only been one oral hearing in this case. And in that hearing, which was on a motion for a temporary restraining order and a request for a preliminary injunction or order to show cause. Well, I'll stop you there, because where is the request for a preliminary injunction? I never found that. The request is for an order to show cause that a hearing on a transcript of the hearing. Was there ever a hearing or an order on a motion for a preliminary injunction? There was no hearing on that as requested. The court refused to order the hearing that was requested. And indeed, your honors, when you look at the short order on the temporary restraining order that was issued by the court, which is the record eight pages long, the court gives such the back of the hand to the arguments by basically focusing on this novel minimal scrutiny analysis that the court fashioned out of the Jacobson case of 1905. I understand why the court did not issue a order to show cause on a preliminary injunction. It is clear from the court's eight page ruling on the temporary restraining order, which was after a hearing, that the court would not have issued a preliminary injunction. The denial of a TRO is not available. You don't have an order denying the preliminary injunction before us. I understand it, but the district court dismissed your original complaint as but granted you leave to amend and you never amended. Yes, your honor, that is correct. We did not amend in this matter because it became clear very quickly, although we did seek leave to amend, it became clear immediately following within days of the dismissal as moot, which we did argue against. We did not get an opportunity from the court without argument to dismiss this case as moot on the basis of the government's representation that the original orders had substantially changed, which we contest today and we contested at the time. The court immediately went back to a very repressive regime with respect to religion within days. It is clear to me that the temporary change of that order that was then persuaded the case prematurely as moot, there have been so many rapid changes in the underlying regulations, not the law, but the regulations that have come under the governor's original order, which we challenged and which we continue to challenge and which is still in effect, your honors. The key point here is that I fail to fathom how a lawsuit that challenges an order that remains in effect, not a statute, not something that was legislatively reversed, not something that has even been substantially modified by the governor, can be moot at this time. The governor's original order, which divides... So is that the issue that's before us now? Is it strictly about the decision as to mootness? No. I started this by asking what do you think is before us now? And now I think I'm getting an answer that says that you object to the decision by the district court to dismiss on the ground of mootness. That's something you're challenging, is that correct? That is one thing we are challenging and we are also challenging the decision on the temporary restraining order, which does fall into the... Well, I go back. I never found a decision on a temporary, on a preliminary injunction and a decision on a temporary restraining order isn't ordinarily appealable. So I'm not sure what the other issue you're trying to push in front of us is, particularly given that I couldn't find any factual record that would have supported the entry of the order in the first place. Is there any factual record here to... I mean, you complain that you weren't given a chance to be heard, but I look at what's in the record and I don't find anything that I can point to to say this justifies concluding that the district court abused its discretion. What is there in the record? You use the word ordinarily and ordinarily is important because a denial of a temporary restraining order is ordinarily not appealable unless it is tantamount to a preliminary injunction hearing and that is But I never saw you asked for a preliminary injunction. I looked and didn't find something called motion for a preliminary injunction. I'd be thrilled if you could give me a ER reference that lets me see that, but I haven't found it. Your honor, our original motion for a temporary restraining order is captioned a motion for a temporary restraining order and for an order to show cause that a preliminary injunction should not issue and it was also requested orally in addition to that at the hearing and was acknowledged by the court as a request and the court indeed in its eight page denial of a motion for a temporary restraining order thoroughly dealt with the issues that were raised by our motion for a temporary restraining order to enjoin the very executive order that remains in effect in California and pursuant to which all of these other seven different types of regimes that we have seen come and go every few weeks in California have been enacted and that order remains in effect. That order purports to criminalize a first amendment activity of worship in the state of California and it just a second. I mean the substantive arguments I think we're all well aware of now and we just spent an hour going through with the South Bay case, but so are you asking us to reverse the district court holding that the case was moved? Yes, I am. I am asking you to reverse that holding. I am asking you to reverse and vacate the judgment and we would start all over then you would go back and then you would have to file a preliminary injunction and make a motion for preliminary injunction and provide you know give an evidentiary basis for that motion. I don't disagree with that your honor but what is critical is that had the court applied the correct standard at the beginning which it refused to do and in fact made up a standard of minimal scrutiny which is not based in any of the United States Supreme Courts or this court's last many decades of jurisprudence, we would not be in the position of all of the other cases that have come before this court over the past several months. The cases that have taken up time in the United States Supreme Court and so if the correct standard were applied and correct guidance were would apply and of course at the time of the original hearing we are talking about April in the early weeks of these restrictions. I think everybody here listened to the governor say two weeks to flatten the curve. I'm a person of faith. I with many others did that but then we began to see these discriminatory applications that allowed people to shop for alcohol and marijuana go to in and out process and those of us who are faithful were told you may not worship and that is the basis on which we came to the court and at that time your honor a circumstance that has now changed the counties were actually threatening to arrest congregants who congregated in a parking lot within their vehicles to hear their pastor speak from a far distance upon the filing of lawsuit that particular restriction was rolled back and subsequently the counties have indeed eliminated their own special interpretations of the governor's order but they have pledged both of the county defendants in this matter have pledged to continue the restrictions on that the governor has implemented and that as I said change every few weeks. Let me ask you to focus because time is limited. I've asked you and I'll repeat this one to point me to what in the record represents a motion for a pulmonary injunction because I said I haven't found it. I ask you to point me what in the record would support the entry by us of the injunctive or restraining relief you apparently seek to justify directing the district court to enter a certain kind of I haven't found in looking in the record is either a motion for a pulmonary injunction or record evidence to support the entry of any restraining order. Can you point me to either one of those? Your honor I can only point to you to what I've already said which is that the original so far it sounds to me like the answer is no that you can't. Well if you consider a a mention of it on the in the pleadings as I pointed out and if you consider an oral. Well if you give me that reference that's something I'm not sure that mentioning and passing in pleadings mean I suspect your complaint probably sought that relief but that's not a motion for a preliminary injunction. Your honor there is no motion for a preliminary injunction in this matter there is a request. Okay so finally we have that concession I appreciate that it took us a little long to get there but we've got that acknowledgement that we don't have a motion for a preliminary injunction and the district court never ruled on such a motion. Part two what evidence is there in the record that would support either an entry by us or directions by us to the district court to grant you the relief you appear to seek? The face of the governor's executive order is a violation of the the restrictions imposed by the governor on a place of worship versus the restrictions applied by these two other activities and what we just argued about the preceding hour. Do you have any evidence to add to the evidence that was tossed in front of us in that case? I have no evidence beyond the evidence that was introduced in the prior case your honor and that is because of the timing of this case and indeed at the hearing as well. Well let me stop you're starting you've moved to the excuse but it seemed to me this case was being developed through the summer and you made an affirmative election not to take advantage of the leave to amend that was granted and continued to fight over the mootness issue but and I want to get to the mootness issue because I'm not saying I disagree with you on that but I don't see how you could possibly get any other relief based on the record you put in front of us in this case because there's nothing here that that supports the argument that this is a discrimination against the exercise of free action. This is this is a restriction on the free exercise of religion except for your broad characterizations. Well you may disagree with those characterizations your honor it is our record of the governor's order that decrees certain activities are essential and certain activities are not and the governor decreeing in two days after his executive order that which is part of what we what we filed suit on that the only type of worship that were that was allowed at that time was worship by digital means. The only type of workers of a church that are considered or other place of worship that are considered to be essential are those who stand in front of a computer screen like myself right now delivering remote services which do not meet the religious needs of tens of millions of faithful Americans and millions of them here in California and I think that's been well developed why that is your honor and so the very scheme. But you're arguing about things that have been changed I mean. But they haven't been changed they haven't been changed the governor's executive order has not been changed the governor's executive order that applies to the governor himself the ability to to decree who is essential and who is not in California does not make appropriate accommodations for fundamental constitutional protected speech in California and that itself on its face is a constitutional violation that persists to this day and well see I gotta I have to try to get you to focus once again because the argument as I've understood it and the argument has been developed already is not that a line is being drawn between what is essential and what is not it's whether the regulation is narrowly tailored to put up with to allow activities that are not evaluated to pose too great a risk for community spread. Is your argument something other than that? No that is the second point of the of the argument we believe the threshold argument that the governor's executive order itself is unconstitutional based on its framework is an argument and then one can have arguments about the specifics of the two days the government has discriminated in its fine-tuning of that order in various different I think seven different orders that the health officials in California have issued pursuant to the governor's discriminatory order have continued to make invidious distinctions but even in this case at the very beginning of this litigation the government made the argument that based on church contamination in South Korea and contaminations that have occurred in other countries and anecdotes from situations where people who are uneducated about this disease which was all of us in April of 2020 it was a basis for these distinctions now I have heard the argument and I have seen all the declarations and I have you know we see that battle of the experts with respect to the science behind these distinctions but fundamentally the government's position is no different today than it was before and that many courts have hastily accepted which is going church it's like some form of entertainment like Coachella Coachella has been mentioned in some of these cases you know outdoor entertainment singing and so forth or a sports event those are optional to most people of faith they are certainly not the same as they dictate from a faith to worship regularly worship communally accept the body of Christ and all of the other things that require gathering in the case of an orthodox Jewish congregation and midtown so we're all familiar with those and we can disagree about them but the governor from the beginning of this COVID shutdown decreed those to be not as important and has underscored that repeatedly yes your honor so I just I want to know what your argument on mootness is as far as I can tell that's the only thing you have in front of us is your argument that the case is not thank you your honor with respect to the mootness our position is that under the Rosbrook case in the ninth circuit from 2014 none of the factors are met here that would make this case moot this is not a legislative alteration this is a policy change the policy change that the government relies on does not change the original executive order that is frontally attacked in our complaint but the the factors are five is the policy change broad in scope and unequivocal in tone it is not effectively the same restrictions have come in various different shades and even when you have and and by the way just to be clear the government sets up a straw man argument that says that we are now attempting to appeal all of these seven subsequent orders that is not the case your honor the reason that we cite those is to demonstrate to the court that the government cannot establish that the changes in policy the incremental changes in the policy that it has repeatedly made every few weeks to avoid frankly a judicial scrutiny i believe is one of the reasons that they've done that it they don't meet this test they have not made permanent changes they have not made broad changes in scope the changes have never been unequivocal if anything the governor repeatedly warns us and these orders repeatedly warn us that they can be changed at any time if the rates of infection whether they're related to churches or houses of worship or otherwise will uh can can put us back in the box do the uh the second factor is do the changes fully addressed all of the objectionable measures alleged by the plaintiff that has never been the case the plaintiffs in this case continue to challenge the executive order and they continue to challenge hard caps they continue to challenge second class status of people of faith whether the plaintiff's was the catalyst for the new policy i actually doubt the government would argue that the plaintiff's case in this case was the catalyst for any of these the government in fact has studiously stated that it makes changes based on science and not based on any particular lawsuit how long has the policy been in place by the time the appeal is heard the policies change every few weeks the policy might be different by the time we go to bed tonight in this state and whether the governor the government has followed its new policy thus far no it has not within five days after the order that the government cited to dismiss this case as moot the government changed the framework entirely and it has changed that framework i think at least three to four more times after that and one can predict it will continue to change that framework based on the statements by the government so none of those factors in the rosebrock case are met and accordingly this case is not moot and indeed similar analysis was brought to bear in the arguments that because a particular house of worship had been moved from one tier to the next uh that that ergo there there was a mootness analysis of the court so no it is not all of these changes in policy under covet are fleeting they are subject to rapid change and in fact these both states have rapidly changed these so that's the lay of the land and i respectfully um would submit that if this case is moot because the government keeps changing its framework and its mind then it is difficult to see any case including my colleague mr lemandry's case which has in fact he made the tactical decision in that case which i am also counseling to uh to amend to amend the complaint twice and yet we we are both in the same position the courts have continued to refuse to issue injunctions on plainly unconstitutional orders that are really very very similar if not worse than the orders at issue in new york and i think the attempts by the government to distinguish the new york scheme and the new york orders are lacking and so we would respectfully request our opportunity with this mootness uh decision that resulted in a judgment being vacated to go back and litigate this case using the proper strict scrutiny framework that should apply and yes at that point your honors we may very well decide to amend our complaint to wrap in all of the uh all of the developments that have occurred but it was an exercise in futility at the time that that was originally presented all right so counsel what you want us to do is reverse the demand yes your honors that is correct right why don't you reserve the remaining time thank you state of california thank you good afternoon deputy attorney general todd kowarski again on behalf of the state the court should affirm the district court's dismissal and deny plaintiff's apparent request for an injunctive an injunction in the first instance and i think walking through the timeline might be helpful to the court given the somewhat complicated procedure uh that's in discussion with opposing counsel um i think the court is right that plaintiffs never or i know the court is that plaintiff never moved for a preliminary injunction in april upon filing suit they moved for a temporary restraining order and uh defendants only had three days uh to garner the evidence and to oppose that motion uh the court held a one-hour hearing took no evidence no evidence was heard at um and and denied the tro uh plaintiffs never sought you know thereafter to for a preliminary injunction they never conferred with counsel for the state or other defendants to stipulate that that tro order was tantamount uh to a pi or stipulate that a pi could not issue uh the district court's order denying the two the temporary restraining order never mentioned a preliminary injunction at all um nothing foreclosed plaintiffs from uh uh moving for a preliminary injunction even on their original complaint um as the case went forward it wasn't until july when the district court dismissed and i think as the court recognized with leave to amend uh plaintiff's original complaint because the regulatory framework had changed rather than reconsideration of that order which they're entitled to do again the court denied that motion for reconsideration did not foreclose the possibility uh that plaintiffs could amend their complaint again to challenge the regulatory framework and the the mooting event that took place uh after april and and before july when the district court uh dismissed the complaint as moved was the state's reopening of worship services um since may uh plaintiffs and everyone in california has been able to worship in person um outdoors and and that's been unchanged uh since may i suppose that's eight eight or eight months ago um and then in june the state lifted any numerical restrictions for outdoor worship um at all so that's that's been the case since since middle of june um plaintiffs are correct that indoor worship what you know was re-restricted um beginning in july but that doesn't change the fact that the state implemented an entirely new regulatory framework in august with with the blueprint which remains in effect today that you know as we've uh discussed for about an hour at the previous hearing that's the framework that controls the first amendment analysis index in in this case can i just so that i'm clear on this the mooting event so the complaint challenged the march order which did not allow indoor any worship services did not allow in-person worship services remote drive-in services were permitted since day one in march march order did not allow in-person religious services at all that's correct and that's what they challenged and the reason it's new was that in may the state reopened in-person religious services yes your honor that's what the district court found in july that complaint so you're arguing the district court was correct because that is a mooting event for the claim the only claim that's in the complaint yes your honor the district court was correct and the district court certainly did not abuse its discretion in affording plaintiffs leave to amend defendants never argued that the entire case should be dismissed with prejudice without leave to amend simply that the original complaint the original pleading the operative pleading didn't challenge the operative restrictions plaintiffs never alleged in their original complaint why they might be harmed by only being permitted to worship indoors so that and that remains today that the plaintiffs never argue that their religious mandate requires them to worship indoors in their sanctuary or that worshiping outdoors is simply infeasible it might be the case that that's true um you know defendants aren't arguing that i think that's the showing that south bay has made um but we we don't know and certainly the district court didn't know um also draw the court's attention to the district court's ruling in harvest rock which found exactly that that the plaintiffs never explained why they were harmed by the the state's allowance of outdoor worship services um again it might be the case but but it's a requirement uh to demonstrate article three standing that plaintiffs make that showing plaintiffs have the burden of showing you know for the purposes of standing and also certainly for the purposes of obtaining a preliminary injunction um plaintiffs argue that um and then just to finish out the timeline after the district court in october denied reconsideration counsel for the state approach plaintiff's counsel said uh uh would you like to amend the complaint given that the the court's permitting that uh counsel said no and then they and then when uh we conferred with council about moving for an entry of judgment based on that representation council uh affirmed that they would not oppose entry of judgment and they didn't oppose entry of judgment um so we're in a situation where plaintiffs have had every opportunity to amend their complaint to explain why they are harmed by their currently operative restrictions and why those currently operative restrictions are unconstitutional plaintiffs in their briefings and today argue that executive order 33-20 remains on the books that is true however that that about worship services uh it doesn't it certainly doesn't uh set forth the regulatory framework that's in in place today um at the time uh the in in march again when players filed their complaint and moved for a tro all in-person worship was shut down since then uh subsequent executive orders and subsequent orders from the public health officer has permitted in-person worship and set the currently operative regulatory scheme um i'll note that the supreme court and other uh circuit courts have agreed that in this situation uh claims are moot uh this was the situation in the limb romanian pentecostal uh church case before the supreme court which rejected an application because recently a few days before that that application for an injunction uh state of state of illinois um had had changed the regulatory framework this was all and we've cited these cases in page on page 32 of our answering brief this is also the case in the sixth circuit in the maryville baptist church case fourth circuit in the lighthouse fellowship case the fifth circuit in the spells versus edwards case and also um if the supreme court's uh uh denial uh touches on this issue in the danville christian academy case um plaintiffs appear to heavily rely on the voluntary cessation exception to mootness as articulated in rosebrock i'll note that rosebrock certainly did not consider the rose brought the outcome of that case found that uh the voluntary cessation exception did not apply that mootness did foreclose relief in that case and the mooting event far from a legislative action and far from a complete overhaul of the detailed regulatory framework was a single email from the director of a veterans administration campus and this court found that that single email was enough to uh uh to move plaintiff's claims and that voluntary cessation did not apply uh going through the rosebrock factors broad and scoped and equivocal in tone the blueprint certainly covers the whole you know nearly i would say all secular and religious activities that could operate in the state um it certainly addresses the objectionable measures uh that the plaintiffs raised in in their complaint which is the total ban on in-person worship services that was the case in march and was no longer the case in may um uh the the pandemic is you know quite lengthy it's nearly half of the time that this pandemic has has been raging the country in the world um and and certainly the objectionable conduct hasn't recurred uh again outdoor worship services in unlimited numbers has been permitted to take since uh uh june in any part of the state um touching on on plaintiff's uh claims let me ask you to go beyond so so the biggest difference is the uh outdoor services that there are no restrictions on outdoor services and and help me please because i'm not as familiar with the counties involved here and where they stand in the tiers was there a period of time over the past what 10 months that we're talking about during which either of these counties were in a tier other than tier one of the blueprint yes your honor um from may from late may to mid-july uh san bernardino and riverside counties were permitted to worship indoors up to 100 people or 25 capacity um so at the time the district court took up the and ordered dismissal based on mootness the difference was not limited to the outdoor worship but also included authorization for a limited capacity indoor worship service is that correct yes your honor that's correct um the same was true i'll note when the when the district court considered the motion for reconsideration um in august plaintiffs i believe at least one of the counties um and at least one of plaintiffs counties was in a tier higher than tier one meaning they could also have worship services up to 100 people or 25 capacity and that was before the district court when considering the the the motion for reconsideration um but i'll note that in neither situation the dismissal and i know it might forgive me if i'm repeating myself in the to permit plaintiffs to amend their complaint to explain why they are harmed by the the the currently operative uh rules and why those currently operative rules are unconstitutional um a plaintiff has argued that the original and you've acknowledged at least in a technical sense that the original order by the government uh governor remains in effect in some place i had the date but whatever the march day was i think uh and has argued here that the order reflected uh religious discrimination or reflected a treatment of religion as non-essential as compared to other activities which were deemed more essential and that plaintiffs argue remain the thrust of their claim well if if the claim hasn't changed in that respect why would that part of the claim be moot well your honor the claim has changed because the original the executive order and uh n33-20 it says nothing about worship services and it says nothing about other activities rather what it calls for is a total shutdown of all it's a total stay-at-home order everyone must stay in their homes and then the executive order creates an exception except as designated by the public health officer then a few days later the public health officer issued a critical infrastructure list houses of the the the various uh orders from the the public health officer to the point where the the the currently operative order is the blueprint and then also the regional stay-at-home order where it applies so the executive order n33-20 says nothing about well the you know worship may not take place here but these activities may take place it says nothing all it is is a complete everyone must stay in their homes in the state of california roman catholic diocese plaintiffs invoke it doesn't it's it's it's really not the same situation that we had in that case the complaint that plaintiffs had had uh offered and and the regulatory framework that they had challenged in their complaint was the same regulatory framework that was at issue in that decision in their in their writ of injunction um the supreme court found that simply reclassifying a plaintiff's zones of restriction from say the yellow zone or the yellow zone to the orange zone that wasn't a mooting event and that would be akin to uh churches or other houses of worship or sorry counties moving up and down the tier the different tiers in the blueprint um rather what we have in this situation was original complaint challenged the original executive order and completely overhauled by an entirely new regulatory framework that again permitted in-person worship services um so roman catholic diocese certain certainly isn't uh it doesn't control the mootness question in this case um and just about the standard for it must be absolutely certain that that mootness is taking place that's not the standard that this course has applied um for government defendants uh in rose rock and in several of the other cases that we've cited um where plaintiffs have the burden of showing that the the you know the the wrongful uh conduct is like it's likely to occur um to you know again i i you know we think that the the the the court's dismissal should be affirmed certainly there is no abuse of discretion in permitting a plaintiff's to dismiss their uh to amend their complaint um and and plaintiffs in the state's entry of judgment in a way this looks more like a case management question that the district court was simply managing its docket plaintiffs failed to abide by a court order uh directing plaintiffs to amend the complaint in another sense you can look at the plaintiff's uh refusal to amend the complaint and agreeing that judgment should be entered looks more like a voluntary dismissal so that's certain entering judgment in those circumstances certainly wasn't use of discretion um to address some of plaintiff's points uh about the substance um again it's it would be inappropriate for the court to to um enter an injunction in the first instance uh injunction namely against the blueprint for the regional stay-at-home order um uh i think i've made clear and i think the record makes clear that houses of worship have been deemed essential since day one of uh the the executive order from back in march in the critical infrastructure list um i don't think there's any evidence in the record uh indicating that governor newsom or any state officials uh considers uh houses of worship um to be entertainment or frivolous um in any way there is no simply no uh nothing in the record uh you know indicating that the essential as we discussed at length in the previous hearing the state's restrictions on all activities including houses of worship is purely based on the risk that those activities pose it has nothing to do with any consideration that houses of worship you know or worship or religious worship is is less important or you know as entertainment like music entertainment at all the record simply doesn't reflect that in any way well on some level i i do want to to voice a little concern and it has less to do perhaps with the position taken by the state than by the position articulated by the district court which to be fair was operating under a legal understanding which another panel of our court said has undergone seismic change and so last summer uh the sense was there's lots of room to defer to public health but the district court's order uh and i should from last april i don't have the particular date here but it did draw a distinction between uh i'll say just grocery stores without food we die and i'm not sure that's a viable distinction indeed i'd be very dubious that that's a viable distinction and it does suggest that perhaps the district court was approaching this with the notion of well whatever churches fall on the spectrum they don't fall as high as as grocery stores because without food we die that's that's of concern your honor i the state shares that concern and again that order from the district court is not is not before the court here it was a denial of a temporary restraining order based on three days of uh time for the state to garner its evidence and and prepare an opposition um there's no indication that it's tantamount to a preliminary injunction no evidence was heard there were no evidentiary findings um and and nothing foreclosed plaintiffs to make their case at a preliminary injunction juncture so and certainly plaintiffs haven't presented any evidence that the currently operative uh blueprint and regional stay-at-home order uh considers uh other activities to be of more value than worship um again even shopping at the grocery store the state acknowledges poses some risk and that's why the state imposes onerous restrictions on grocery shopping in the regional stay-at-home order 35 percent and a whole host of employment related uh cleanliness plexiglass uh retrofitting of what grocery stores look like in order to mitigate that risk um you know as we got went on at length um state's experts unequivocally opine that in the really impacted counties uh mitigating efforts like masks like distancing is insufficient to mitigate the rest risk posed by such a risky activity like an indoor you know an indoor congregate activity of a shared communal experience like a worship service or like a lecture um again and i compare i bring in the lecture or concert comparison not to say that worship is is of the similar congregate uh gatherings for a shared communal experience um in i'll note that in the in the plaintiff's counsel had invoked well in south bay uh they had amended their complaint uh as plaintiff's counsel well knows having appeared as counsel for south bay those amendments were voluntary um it was it was plaintiff's counsel who voluntarily amended their complaint twice um and again in gish in the in the case we're considering right now uh the court ordered plaintiffs to amend the complaint they didn't follow a court order despite having numerous opportunities to do that um well did it order or did grant leave grant granted granted leave to amend your honor i think that's different all right i understand what you're saying but i don't think we can fairly say that plaintiffs disregard of the court order court gives them an opportunity they elect not to take it that may mean that all they can proceed with is what they've put on the table already and that would appear to be the argument that somehow the original order issued by the governor discriminated against religion by deeming it not as essential as other things but and and if if that's all their argument they they persist with why isn't that argument still viable today why is that argument moved your honor as i've explained the the the executive order n 33 20 which is the only operative executive order that exists today from their original complaint doesn't say anything about categories of activities and i understand and that really denies the claim but it doesn't say why it's smooth and the district court doesn't seem to have engaged with whether that first order was itself discriminatory maybe it did i'll go back and look at that again because i hadn't hadn't framed plaintiff's claim in my mind the way that it it may be maybe have it intended but uh you know given that this is an ongoing dispute and and the been obscure i just i'm not sure i'm comfortable with the notion of saying it's smooth like it's gone away because the basic dispute is still there we just spent the first last hour talking about the basic dispute so that that's my discomfort anything you you have to offer to me and i appreciate i i understand that your honor in south bay plaintiffs have given defendants and the court and the district court the opportunity to consider the currently operative restrictions they've explained why they believe the blueprint and the regional stay-at-home order is unconstitutional and they've also explained why they believe they are harmed by those operative restrictions in contrast in this case in gish plaintiffs haven't given defendants or the or the district court that offer that same opportunity um and despite plaintiffs themselves having had the opportunity to do that whatever findings the court had made the temporary restraining order uh order a denial uh you know those findings aren't appealable as as we've gone on it was three days of briefing uh no findings of facts so again if plaintiffs still wanted to pursue their claims to present evidence why they believe even the original executive order was is unconstitutional they had plenty of opportunities to do that to address a comment about um uh opposing council's uh notion that there haven't been outbreaks uh tied to their their churches um this is a similar argument that was made in south bay um that we've addressed um state has presented unrebutted evidence of uh instances of outbreaks throughout california including in churches nearby in san diego um and in in los angeles county as well and other parts of the state that's been unrebutted um and and the court need not prevent the state from taking uh prophylactic measures to um uh uh handle a public health you know emergency and a public health crisis i think the the district court in south bay said that would be like preventing you know a local health inspector from inspecting any restaurants that so this is the mere notion that are there haven't been any outbreaks that that there's no support that that necessarily leads uh you know that that that state is required to show that each and every church or house of worship in the state of california has led to an outbreak um that would be you know an impossible and there's no requirement all right council thank you you're um over your time and let's see we'll hear from miss fox next county of san bernardino thank you may please the court deborah fox on behalf of the various named county of san bernardino appellees i would offer uh to the court that as to these county named parties this case is totally you will hear that during appellant's argument they talked about that order remains in effect and they also locked the government together as one and did not make any distinctions between the state the county of san bernardino and the county of riverside the only order that remains in effect that was challenged in this lawsuit is the executive order the order that was issued the local health order that was issued by the county of san bernardino was rescinded on may 8th 2020 we find that in the record at 3 er 349 the language is clear and of the unequivocal it says that the orders are hereby rescinded there has been no indication that the county of san bernardino has any intent to readopt to return to to reenact the prior local health ordinance the only offering that the appellants give this court on that point is from a press release also issued on may 25th of 2020 in that press release the county simply says we want to advise the community that the health orders of the local nature have been rescinded that the state orders are in play at that particular time the state orders allowed indoor in-person religious service so this case as to the county of san bernardino is indeed it is not in dispute the general rule about the amendment to legislation and the rescission that would make a case move is in controversy here i would also add that in the most recent application made by the appellants to the supreme court in the united states in that particular issue as well they concede this point they only seek relief as to this state so accordingly we would ask that this court affirm and pull the order of judge bernal finding this case moved as to the county of san bernardino thank you thank you mr patel for the county of riverside may it please the court deputy county counsel ronak patel for the riverside county appellees riverside county respectfully requests that this court dismiss this appeal because it is as explained by miss fox appellants case has been moved against riverside county since may of 2020 when riverside county officials rescinded its public health orders throughout this case appellants have commingled the legislative action taken by the state and county appellees and attempted to consolidate them into one legal posture that tactic is inappropriate because the appellants seek injunctive relief against public health orders that were rescinded seven or eight months ago more importantly those public health orders have not been reinstated nor is there any evidence in the record to suggest that they will be reinstated appellants argue that riverside county has pledged the words used by council this this morning to enforce the state's covid-19 restrictions this alleged promise or pledge however again is nothing more than a press release from may 8th 2020 wherein riverside county board of supervisors voted to rescind its public health orders and align itself with the state home orders from the governor by aligning itself with the state the county was not promising or pledging to enforce the governor's order instead it was actually rescinding more stringent public health orders that it had enacted such as a mandatory face covering and social distancing order in their reply brief appellants argue that voluntary succession exception does not apply because it was based on an executive order not some legislative action as mentioned by the state an email could suffice but this argument also fails as to riverside county because its board of supervisors voted to rescind its public health orders as evidenced by the press release offered by the appellants here finally despite the most recent surge in the spread of covid19 which has resulted in a 0.0 icu capacity in riverside county the county has not reimposed its public health logic would dictate that with this situation at hand and the lack of evidence in the record to suggest that it would do so there is no reason to keep the county in this case for these reasons riverside county respectfully requests that this court affirm the district court's ruling on mootness thank you your honors thank you very much mr patel miss dylan you have some time left uh thank you thank you your uh thank you your honors uh just i'm using headphones now to avoid the um problems with audio i hope you can hear me um so to briefly to uh to respond to some of the points that uh the appellee council have made um i was able to touch on part of my mootness analysis but i wanted to draw the court's attention to the other mootness analysis that is in our briefs and has been previously argued namely that the activities are capable of repetition yet evading review and uh obviously this doctrine stems from the real case but i think that this particular set of facts before the court that has been before the court in all of the covid cases is a quintessential example of that and as i made reference to in my initial part of my argument literally every six weeks on average the government has changed its underlying regulations with no notice typically and with very substantive changes and so even though at the time what changes affected your clients uh how whether they can well i mean you would expect and you would hope there'd be fine tuning but i'm trying to figure out okay for the parties involved here what changes have affected your clients uh how they may worship whether they may worship are they going to be committing a crime by worshiping community how have the changes affected that i as best i can tell is it's since the uh blueprint was entered i i i learned from state's council and i assume you will confirm at some point these counties move from tier two to tier one but i haven't heard anything that suggests the rules that apply to your clients have been regularly going back and forth it sounds like there was a time they could worship indoors and then there was a time they couldn't well there was a time that they could worship indoors your honor that is correct briefly i think that might have been a period of 45 days or so i don't have those exact numbers i apologize for that but for a period of weeks they were able to worship with strict uh numerical hard caps as well as capacity caps in place those hard caps have been ruled by the united states supreme court in the brooklyn diocese case to be not narrowly tailored and i appreciate that this court may not agree that we reached that analysis here today but i'm just responding to the court's question and so the court's question had to do with you're trying to tell us this policy changes so often you can't keep up with it and i haven't found that to be the case for your clients and i'm waiting for you to tell me why my understanding is mistaken your honor in the original lawsuit and as all the papers reflect we are attacking the governor's original order and the immediately following initial order and that is referenced in the governor's initial order he says i'm going to set up a system where if you go go out of your house and you're not an essential worker as the california department of public health will tell us who that is you're a criminal okay so that's the framework that we are challenged and is currently the law in california that is currently really you're you're probably not in your home but i don't think you're under arrest i mean seriously are you trying to tell us that nothing has changed your honor i'm an essential worker under my county's regulations i am in my law firm and i am following the restrictions for a law firm that applies so i know i am not committing a crime here because i am more favored than a person who wants to attempt to go to my sikh temple in fremont across the bay i would be committing a crime so that's the distinction so that framework has always been there at times they've had more or less discriminatory uh application of their rights but the point on mootness is that the government has committed the shell game into play that continues to be the shell game and uh you might question the question i tried to pose three minutes ago was okay what exactly changes have affected your clients because if there is a shell gun going on trying to avoid review that's a problem but i haven't heard that you're now telling me you've had the same problem from day one so maybe the problem isn't the shell game what is the problem i i i believe i have argued that and it's to be clear again all of our moving papers for the injunction and in our verified complaint make reference to the orders that in effect okay so there is the governor's order that's the first order that is still in effect the original california department of public health order that came right after that uh restricted my clients to video worship only that has been changed to include um despite what counsel for the state says indeed people are being threatened with arrest for sitting in their cars outdoors and listening to church services that changed and then eventually indoor worship was was allowed and then eventually 99 of the state was put back into a place where no indoor worship was allowed and i suppose in lake tahoe today you might be able to ski and you might also be able to go to church uh that is not a real communal worship opportunity for most californians and so those changes are what render the legal review of the government scheme of putting religious activities into a lower tier than commerce which is indisputable i don't think the government government even challenges that um that evades review every few weeks the government keeps changing the contours of it and that is why we have had some amendments and that is why in our case we believe it would be futile whatever you amended it to a few weeks later before you got to the 12b motion there would be a different one and it would never get reviewed that's that's the fundamental part of the mootness analysis that this court incorporates and this court looks at and so i would just like to draw the court's attention to that second part of the mootness analysis um and and the united states supreme court has acknowledged that stroke of the pen changes by an executive by a governor by an unelected bureaucrat do not render an illegal policy not subject to review that is that is the recent case in the proclaimed diocese case so so that's the mootness analysis i want to just underscore for the court um your honor the the substantive situation that occurred at the beginning of this case remains the case today the government has set up a framework that immediately allowed costco and now various what i would describe as not eating but rather buying clothes at macy's or other commercial establishments here uh open they are much more open or open at all compared to houses of worship houses of worship are not open in most of the state of california today and that invidious distinction was in the governor's order originally he set up this tier where he decides what's essential and what's not religion is essential and i would say that whatever i thought about that in april i think about that much more today as a person of faith and i know millions of americans agree and supports have also agreed that for the government to decree without regard to the constitution that certain endeavors are more essential than others when costco safeway whole foods they are not protected in the constitution but our right to worship is with no right of the government to tell us how to do it uh in the way that it has i don't think will be disputed by the appellees that we are in a different world now and this is in the record the governor said we may never go back to the way we were before that is why this case even though the underlying record has the underlying regulations have changed it is important for this court to allow review to occur and for these to be redressed so that in the future when the next disease comes along we don't have similar situations where that's clearly wrong now and the appellants deserve a chance to have the court enter that as the record in this case and not a premature dismissal is moved thank you thank you very much counsel you're awesome over your time um but thank you i we've heard and understood all of your arguments um so gish versus newsum will be submitted and this session of the court is adjourned for today
judges: Wardlaw, Clifton, Hillman